IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALICIA BUCHANAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WEST WHITELAND TOWNSHIP, et al. | : | NO. 08-cv-462 |

ORDER AND OPINION

JACOB P. HART                                                                          January 7, 2008
UNITED STATES MAGISTRATE JUDGE

Now before me are Defendants' Motions for Summary Judgment.  For the reasons that

follow, the motion filed by Defendants West Whiteland Township, Police Officer Mark Smith

and Police Officer Michael Buchmann will be Granted and the Motion for Summary Judgement

filed by West Goshen Township and Police Officer Brian Griesser will be granted in part and

denied in part.

I.        Factual and Legal Background

In this case, Alicia Buchanan seeks compensatory and punitive damages pursuant to the

Fourth and Fourteenth Amendments and also brings a conspiracy claim.  The Complaint arises

from a traffic stop by police officers of both West Whiteland and West Goshen Townships.  On

May 1, 2006, at approximately 10:44 p.m., Defendant West Whiteland Township Police

Department (WWTPD) Officer Michael Buchmann was operating an electronic non radar device

monitoring the speed of vehicles on the Route 100 bypass.  He claims that the machine timed

plaintiff's vehicle at a speed of 87 miles per hour in a 55 mile per hour zone and he alerted

WWTPD Officer Mark Smith to stop Plaintiff.  (Buchmann Dep. at 15).  It is undisputed that

Officer Smith activated the emergency lights of his marked police car and attempted to stop

Plaintiff.  After hearing on the police radio that Officer Smith was in pursuit of a vehicle that had

not stopped, Officer Buchmann also activated his lights and siren and pursued the vehicle. Plaintiff failed to stop, now claiming that she was continuing to drive to a lighted area. She continued to travel on Route 100 onto Route 202 and exited on Route 3. The Officers created a roadblock by pulling vehicles in front and behind her vehicle. The pursuit lasted 3.3 miles. It is undisputed that after Plaintiff's vehicle was stopped, West Goshen Township Police Departmenmt (WGTPD) Officer Brian Griesser deployed his taser twice[1] sending shocks into plaintiff.  (Griesser Dep. at 76, 78,80-81). He then reached into Plaintiff's car to retrieve her cell phone. During the incident, Officer Hubbard (not a defendant in this action) broke the passenger side window of the car, dove into the vehicle and removed the keys from the ignition. Defendants maintain that Plaintiff ignored their requests to exit the car, that the keys were still in the ignition, and that she had revved the engine of the car prior to Officer Griesser using his taser. Plaintiff claims that she was tasered prior to revving the engine. The incident was videotaped by the camera located inside of one of the officer's vehicles.

In her complaint, Buchanan asserts, under 42 U.S.C. § 1983, that the Defendant police officers and Townships violated her right to be free from excessive force, to be secure in one's person and property, to access to the Courts, and to due process and equal protection of the law, under the Fourth and Fourteenth Amendments to the United States Constitution. She also alleges that Defendants acted in a conspiracy to deprive her of her Constitutional rights. Finally, Buchanan also seeks punitive damages. In the present motions for summary judgment, Defendants argue that all claims should be dismissed.

---

[1]Plaintiff alleges in the Complaint that Officers Buchmann and Griesser deployed their tasers, but she has since conceded that Officer Griesser deployed his taser twice.

II. Standard for Summary Judgment

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pr. 56. The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, supra at 325; Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party. Anderson v. Liberty Lobby, supra at 255; Tiggs Corp. v. Dow Corning Corp., 822 F.2d 358 , 361 (3d Cir. 1987). Nevertheless, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra, at 323.

III.    Discussion

A.    Claims Against Individual Defendants

A plaintiff may bring a § 1983 action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. Thus, in order to state a cause of action under § 1983, a

plaintiff must demonstrate that "(1) the defendants acted under color of [state] law[2]; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes." Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997). "Section 1983 'is not a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1870 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 2694, n.3 (1979)).

      1.      Fourth Amendment- Excessive Force

Here, Plaintiff seeks damages against the individual officers in both their official and individual capacities for excessive force in violation of her Fourth Amendment rights. The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, Ker v. California, 374 U.S. 23, 30, 83 S. Ct. 1623, 1628 (1963), provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const., amend. IV. The Fourth Amendment further prohibits the use of unreasonably excessive force when making an arrest. Brower v. County of Inyo, 489 U.S. 593, 599, 109 S. Ct. 1378, 1382-1383 (1989). Whether a police officer used excessive force in the course of an investigatory stop or other "seizure" of a free citizen must be determined using a reasonableness test, giving careful attention to the facts and circumstances of each particular case, and recognizing that the use of some coercion necessarily inheres in the officer's right to make such an investigatory stop  or seizure. Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871-72 (1989). These facts and circumstances include "the severity of the crime at issue,

---

    [2]It is undisputed by the parties that the Defendants were acting "under the color of state law."

whether the suspect poses an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.  As the United

States Supreme Court has held:

> The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officer['s] actions are "objectively reasonable" in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.  An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Id. at 397.  The "'reasonableness' of a particular use of force must be judged from the perspective

of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham 490

U.S. at 396.

Officer Griesser:

It is undisputed that Officer Griesser used force by deploying his taser twice, once in

plaintiff's chest and once in the abdomen.  Given the dispute as to the facts surrounding the

incident, the question of whether the force was objectively reasonable under the circumstances

must be left for the jury.  Given the factual issues in dispute regarding the commands being given

to Plaintiff and whether she actually revved her engine before initially being tasered, we will deny

summary judgement as to the issue of whether Officer Griesser's use of the taser constitutes

excessive force in violation of Plaintiff's Fourth Amendment rights.

Officers Buchmann and Smith:

Not only is it undisputed that neither Officer Buchmann nor Officer Smith deployed their

tasers, but it is also undisputed that neither officer used any force against Plaintiff.  The only

theory of liability against these officers is whether they had a duty to intervene[3].

In order to establish a Fourth Amendment violation for failure to intervene, a plaintiff must establish that (1) the police officer failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge and (2) there was a "realistic and reasonable opportunity to intervene." See Smith v. Mensinger, 29 F.3d 641, 650-51 (3d Cir. 2002). Moreover, it is the Plaintiff's burden to adduce evidence of both requirements. Id.; Gainor v. Douglas County, Georgia, 59 F.Supp.2d 1259, 1289 (N.D. Ga. 1998) ("plaintiff must proffer evidence that the officer in question had a reasonable opportunity to intervene.").

In conducting this inquiry as to whether either of the officers had a realistic and reasonable opportunity to intervene, "courts consider many factors, including the temporal length of the alleged assault, the proximity of the non-intervening officer to the alleged assault, the ability of the non intervening officer to perceive and/or hear the alleged assault, etc." Armbruster v. Marguccio, Civ. A. No. 05-344, 2006WL 3488969, *7 -8 (W.D.Pa. Dec. 4, 2006) (citing Riley v. Newton, 94 F.3d 632, 635 (11th Cir.1996) (where officer "had no reason to expect the use of excessive force until after it had occurred, he had no reasonable opportunity to protect [plaintiff],

---

[3]In her response to Defendants' Motion for Summary Judgement, plaintiff seems to argue that Officer Buchmann exercised excessive force in "yanking" the probes from the taser out of plaintiff. However, as there is no such allegation contained in plaintiff's Complaint, we need not address this argument. Her expert also seems to impose liability on Smith, as the supervising officer for West Whiteland Township, for allowing her to leave the scene without getting medical attention. We note, however, that since the taser was not in plaintiff's eye or genitalia, even according to West Whiteland's policy, it was not required to be removed by medical personnel. Plaintiff was not prevented from seeking medical attention after the probes were removed, and in fact, she did so on her own after leaving the scene. Plaintiff also seems to argue that Officers Smith and Buchmann created a dangerous situation by giving plaintiff verbal commands and/or reaching for her cell phone. However, this is not an allegation of a Constitutional violation. Furthermore, once again, these claims are not plead in the Complaint.

and the obligation to take steps to protect him never arose."); <u>Swinyer v. Cole</u>, Civ. A. No. 04-5348, 2006 WL 1874100, *3 (W.D.Wash. July 6, 2006) ("By all accounts, Officer Cole's reaction to the comments made by Mr. Swinyer happened quickly and was short lived. By the time the other officers in the jail realized what was happening, Officer Cole had released his hold on Plaintiff and the incident was over."); <u>Mitchell v. James</u>, Civ. A. No. 04-1068, 2006 WL 212214, *5 (E.D.Mo. Jan. 27, 2006) ("it was proper to consider the proximity of the officers to the officer who allegedly used excessive force, the nature of the officer's actions, whether there was a substantial risk of serious harm to the inmate, the inmate's actual injuries ...")).

Here, it is undisputed that the tasering took place in a matter of seconds.  Since plaintiff had initially refused to pull over and had not yet exited her vehicle, there were numerous officers surrounding the vehicle.  Both Officer Buchmann and Officer Griesser had their tasers pointed at her.  According to Officer Griesser's testimony, he warned Plaintiff that if she did not comply with his commands he would use the taser.  (Griesser Dep at 73).  However, according to Plaintiff's own testimony, she was not issued a warning.  (Buchanan Dep at 65, 67-68).

A duty to intervene has been imposed in cases where officers failed to stop an ongoing attack. <u>See e.g</u> <u>Skevofilax v. Quigley</u>, 586 F. Supp. 532 (D.N.J. 1984) (duty to intervene where uniformed police officer refused to intervene in unprovoked beating of a man by off duty officers); <u>D'Arrigo v. Gloucester City</u>, Civ A. No. 04-5967 2007 WL 1755970, 7 (D.N.J. June 19, 2007) (allowing claim of failure to intervene to go to jury where defendant, who was standing directly behind Plaintiff when officers attacked him, failed to intervene to prevent officer from repeatedly punching Plaintiff in the chest); <u>Davis v. Rennie</u>, 264 F.3d 86 (1st Cir. 2001) (finding duty to intervene where patient was repeatedly punched in the head by mental health workers);

7

Byrd v. Brishke, 466 F.2d 6 (7th Cir. 1972) (finding duty to intervene where officers repeatedly beat a suspect and refused medical treatment for over one hour). However, the alleged excessive force in this case was not an ongoing attack. Rather, here, given the speed of the events taking place, plaintiff has failed to demonstrate that there was a realistic possibility that Officers Smith or Buchmann had reason to know that Officer Greissser was about to make the split second decision to deploy his taser or that they had a reasonable opportunity to stop him. Having viewed the videotape of the traffic stop, this court finds that the events took place so quickly that there was no realistic or reasonable possibility for either Officer Buchmann or Officer Smith to intervene to prevent Officer Griesser from using his taser on Plaintiff. See O'Neill v. Krzeminski, 839 F.2d 9 (2d Cir. 1998) (no duty to intervene where "three blows were struck in such rapid succession that [the officer] had no realistic opportunity to prevent them"); see also Yarnall v. Mendez, 509 F.Supp.2d 421, 433 -434 (D. Del 2007) (finding after reviewing videotape that use of taser happened so quickly that neither officer had a reasonable and realistic opportunity to prevent its use); La v. Hayducka, 269 F.Supp.2d 566, 581 (D.N.J. 2003) (no duty to intervene to prevent split second decision to shoot single gun shot). We therefore, grant Defendants Officers Smith and Buchmann's motion to dismiss the excessive force claims against them.

    2.    Equal Protection:

Buchanan claims that she was impermissibly detained and tasered on the basis of her race. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." This provision embodies the general rule that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985).

In order to state a claim for an equal protection violation, Buchanan must demonstrate that the officer's actions (1) had a discriminatory effect, and (2) were motivated by a discriminatory purpose. Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002). While she is African American and all of the offices at the scene are White, this is not sufficient to sustain a claim of an equal protection violation. She has not even alleged that any of the officers at the scene made any statements or references which would indicate that the traffic stop or the use of the taser were motivated by race. Plaintiff states only that Officer Smith stated that she was "drunk" and "accused her of being on drugs". (Buchanan Dep. at 109). As Defendants have stated, Buchanan does not explain how these statements support her equal protection claim. It is undisputed that the officers were called to the scene because plaintiff's car was clocked as traveling at a rate of speed in excess of the legal speed limit and that plaintiff initially failed to stop. Plaintiff has failed to present any evidence that the officers' actions were motivated by an intent to discriminate against her on the basis of her race. See Washington v. Davis, 426 U.S. 229, 239-40, 96 S.Ct. 2040 (1976). Therefore, she has failed to present evidence to sustain a claim of an equal protection violation.

3.      Conspiracy:

Buchanan asserts that all defendants conspired to deprive her of the right to be secure in her person and property and to be free from excessive force. (Complaint at par. 43). In order to state a claim for conspiracy under § 1983, the plaintiff must demonstrate (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. See Marchese v. Umstead, 110 F.Supp.2d 361, 371 (E.D.

Pa. 2000). The third Circuit has defined a conspiracy as "a combination of two or more persons to do a criminal act, or to do an unlawful act by unlawful means or for an unlawful purpose." Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1977) (citing Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974)). To prevail on a conspiracy claim, the plaintiff must present evidence of an agreement-"the sine qua non of a conspiracy." Spencer v. Steinman, 968 F. Supp. at 1020. "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." Panayotides v. Rabenold, 35 F.Supp.2d 411, 419 (E.D. Pa.1999).

Buchanan has not demonstrated any facts from which we can reasonably infer that there was an agreement between the defendants to violate her Fourth Amendment rights. She has not presented any evidence of an agreement or meeting of the minds prior to the alleged excessive force.

In her response to the Motion for Summary Judgement, Buchanan now also argues that there was a conspiracy between the defendants after the fact to conceal the use of excessive force by agreeing to lie about her revving the car engine prior to being tasered. While she may satisfy the first element of a conspiracy claim by alleging a meeting of the minds, she has not sufficiently alleged a deprivation of civil rights resulting from this agreement. Swiggett v. Upper Merion Tp., Civ. A. No. 08-2604, 2008 WL 4916039, 4 (E.D. Pa. 2008). Since Buchanan cannot allege that she has been denied access to the courts as a result of this alleged concealment, it will not serve as a separate constitutional violation. Id. Plaintiff has not alleged any facts which would allow us to infer that a conspiracy to violate her rights occurred prior to the alleged violation of her Fourth Amendment rights. See id. (finding no conspiracy where according to the complaint, the

10

conspiracy took place after the alleged use of excessive force when the officer wrote the official report in a way that covered up the defendants' alleged violation of plaintiff's Fourth Amendment rights). We therefore, will dismiss the conspiracy claim.

4.     Qualified Immunity

The doctrine of qualified immunity shields government officials "for liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Restated more precisely, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) quoting Harlow, 457 U.S. at 818-819; see also Pro v. Donatucci, 81 F.3d 1283 (3d Cir. 1996). The availability of qualified immunity as a defense is a question of law. Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789 (1991).

The qualified immunity analysis breaks down into two issues. First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end and the officer is entitled to immunity. Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). Once it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim must proceed to the second step and decide whether the constitutional right was clearly established. Id. In other words, the reviewing court must query whether, in the factual scenario established by the plaintiff, a reasonable officer

11

would have understood that his actions were prohibited. Id. at 136. "If it would not have been clear to a reasonable officer what the law required under the facts alleged, he is entitled to qualified immunity." Id. If, on the other hand, the requirements of the law would have been clear, the officer must stand trial. Id.

Defendant Officer Griesser argues that he is entitled to qualified immunity because his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 818 (1981); Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). However, factual issues preclude the dismissal of this claim on summary judgment. If Buchanan succeeds in proving her claim of excessive use of force, she will have demonstrated that Officer Griesser's use of the taser was unreasonable under the circumstances. She therefore, will have shown a violation of clearly established constitutional rights of which he should have known. Accordingly, Defendant Officer Griesser's motion for summary judgment will be denied in this respect.

B.    Monell Claims

Under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), a municipality such as the defendant Townships are liable under § 1983 only when the constitutional injury to the plaintiff can be attributed to their policy or custom. In Monell, the United States Supreme Court held that a civil rights complaint against a municipality or its agent must allege (1) the existence of a custom or policy of the municipality which is of such longstanding as to have the force of law; and (2) that one of the municipality's employees violated the plaintiff's civil rights while acting pursuant to this custom or policy. 436 U.S. at 691-695. In

12

addition, "a municipality may be held liable if it fails to properly train its employees, such that the failure amounts to deliberate indifference to the rights of persons with whom its employees come into contact." City of Canton v. Harris, 489 U.S. 378 (1986).

West Whiteland Township:

Buchanan asserts that West Whiteland Township is liable for its failure to properly train, discipline, investigate and supervise their police officers. She now argues three separate grounds for municipal liability: "(1) municipal policy or custom of tolerating the use of excessive force by its officers; (2) deliberate indifference by the West Whiteland Township evidenced by failure to train, supervise and discipline its officers in regards to felony traffic stops; and (3) acquiescence to the known pattern of unlawful conduct of unfit police officers in general, and defendant Smith in particular." Plaintiff's brief in opposition to SJ at p. 20-21. Since we do not find any Constitutional violation on the part of Officers Smith or Buchanan, plaintiff's Monell claim against West Whiteland Township must also be dismissed. Williams v. Borough of West Chester, 891 F.2d 458, 467 (3d Cir. 1989) (A municipality can be held liable only where one of its employees is primarily liable under section 1983).

West Goshen Township:

Plaintiff's claim against West Goshen Township is based on a failure to train their police officers: (1) to use only reasonable force when necessary; (2) to adequately train an officer in the proper use of a taser gun; and (3) to adequately train an officer that force is not reasonable when the subject poses no physical resistance or threat. Plaintiff's brief in opposition to SJ at p. 30.

The failure to train theory under § 1983 was embraced by the United States Supreme Court

in <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989).  In that case, the Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>Id.</u> at 388.  Expanding on this theory, the Third Circuit has explained that "[a] plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivation occurred." <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 145 (3rd Cir. 1997).  In assessing municipal liability for failure to train, the focus is on the adequacy of the training program in relation to the tasks that the particular officers must perform.  <u>Cannon v. City of Philadelphia</u>, 86 F. Supp.2d 460 (E.D. Pa. 2000) (citing <u>Canton</u>, 489 U.S. at 390).  Moreover, a plaintiff must also demonstrate that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." <u>Bryan</u>, 520 U.S. at 404, 117 S.Ct. 1382.  A need for training or other corrective action to avoid imminent deprivations of a constitutional right must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures. <u>See Jones</u>, 787 F.2d at 205; <u>Fulkerson v. City of Lancaster</u>, 801 F. Supp. 1476, 1483 (E.D. Pa. 1992).

It is undisputed that the West Goshen officers, including Officer Greissser were trained on the use of tasers and were trained on the use of force.  Plaintiff argues, however, that training was lacking on the precise circumstances of when to use a taser.

Plaintiff has not set forth a valid <u>Monell</u> claim as there is no showing of deliberate indifference on the part of West Goshen Township.  It is not sufficient to simply allege that additional or better training may have prevented this incident. <u>See Joines v. Township of Ridley</u>,

14

229 Fed. Appx. 161, 164 (3d Cir. 2007) (affirming district court's grant of summary judgment on a Monell claim, noting that "[d]eliberate indifference is not established simply because better policies could have been enacted") (internal citations omitted). In City of Canton, the court held that "[a] municipality's deliberately indifferent failure to train is not established by (1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program occasionally was negligently administered; or (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct." Simmons v. Philadelphia, 947 F.2d 1042, 1060 (3d Cir. 1991). We find that the Monell claim here, is exactly what City of Canton warns against. See Davis v. Borough of Norristown, 400 F.Supp.2d 790, 799 (E.D. Pa. 2005) (claim that officer was not trained on how much force to use during arrest was insufficient in light of training on force continuum). It is undisputed that West Goshen Township officers are trained on the use of tasers and are trained on the "force continuum". Officer Griesser received a certification on use of a taser. There have been no prior citizen reports against Defendant Griesser and no complaints of excessive force against officers in the Township. Plaintiff's claim for failure to train is simply that better training on the precise circumstances of when to use a taser would have prevented this incident. Buchanan fails to demonstrate how the failure to train reflects a "deliberate" or "conscious" choice on the part of the Township, in light of the training Officer Griesser received on the force continuum and specifically on the use of tasers. See id. Plaintiff has failed to present any evidence that, at trial, would give a jury reason to believe that West Goshen Township's training program rises to the level of deliberate indifference. For this reason, her § 1983 claims against West Goshen Township must be dismissed.

15

C.     Punitive Damages

Finally, Buchanan seeks punitive damages resulting from the alleged violation of her Constitutional rights.   It is well settled that punitive damages may not be awarded against municipalities. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  The Third Circuit has also held that punitive damages are not available against an officer sued in his official capacity.  Gretory v. Chechi, 843 F.2d 111, 120 (3d Cir. 1988).  Therefore, even if the jury finds that Officer Griesser used excessive force, punitive damages are not permitted against Officer Griesser in his official capacity.

Officer Griesser argues that Buchanan has failed to establish support for a finding of punitive damages against him in his individual capacity.  "However, in a § 1983 claim against individual defendants, a jury may assess punitive damages if the defendant's conduct is shown to be motivated by an evil motive or intent, or when it involves reckless or callous indifference to constitutionally protected rights." Davis ex rel. Davis v. Borough of Norristown, 400 F.Supp.2d 790, 801 (E.D. Pa. 2005) (citing Brennan v. Norton, 350 F.3d 399, 428-29 (3d Cir.2003)). We will defer ruling on this issue until the close of Plaintiff's case.

IV.    Conclusion

For the reasons set forth above, I now enter the following:

16

ORDER

AND NOW, this 7th day of January, 2009, upon consideration of the Motion for Summary

Judgement filed by Defendants West Whiteland Township, Marc Smith and Michael Buchmann

(Doc. No. 46), the Motion for Summary Judgment filed by Defendants West Goshen Township

and Brian Griesser (Doc. No. 47), Plaintiff's response thereto (Doc. No. 48) and the reply to

Plaintiff's response (Doc. No. 54), it is hereby ORDERED as follows:

1.   Defendants West Whiteland Township, Marc Smith and Michael Buchmann's

Motion for Summary Judgement (Doc. No. 46) is GRANTED and summary

judgement is entered in favor of the Defendants West Whiteland Township,

WWTPD Officer March Smith and WWTPD Officer Michael Buchmann.

2.   Defendants West Goshen Township and Brian Griesser's Motion for Summary

Judgement (Doc. No. 47) is GRANTED in part and DENIED in part, as follows:

(a) Plaintiff's claims of equal protection violations and conspiracy are

DISMISSED.

(b) Plaintiff's claims against Defendant West Goshen Township are DISMISSED

and West Goshen Township is dismissed as a defendant in this case;

(c) Defendants' Motion for Summary Judgment is otherwise

DENIED, leaving only a Fourth Amendment claim of excessive

force against WGTPD Officer Brian Griesser; and

(d) The Court will defer its ruling as to whether punitive damages will be

17

permitted against Officer Griesser in his individual capacity until the close of

Plaintiff's case.

BY THE COURT:

_____

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE